FILED
CLERK, U.S. DISTRICT COURT

11-4-2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ PG _____ DEPUTY

Kevin Lofton
868Victor Ave #14
Inglewood, CA, 90302
(310) 773-1296

# UNITED STATES DISTRICT COURT FOR
# THE CENTRAL DISTRICT OF CALIFORNIA

KEVIN LOFTON,

      Plaintiff,

    vs.

ISABELLA GUZMAN,

ADMINISTRATOR SMALL

BUSINESS ADMINISTRATION,

      Defendant(s)
_____

) Case No. 2:22-cv-07334-SPG-ASx
)
)
)
)
)
)
)
)
)

.

# **ORIGINAL COMPLAINT FOR DAMAGES UNDER THE**
# **FEDERAL TORT CLAIMS ACT**

1. This is an action brought pursuant to the Federal Tort Claims Act,

("FTCA") and the Fourth and Fifth Amendments to the United States

Constitution, 28 U.S.C. §1331, §1346(b), §1402(b), §2401(b), and §§2671-

2680, by Kevin Lofton against the Small Business Administration (SBA) for civil penalties for violating the Privacy Act, 5 U.S.C. § 552a, for violating Title VI  42 U.S.C. § 2000d et seq., regarding retaliation and discrimination, for violating the Takings Clause of the US Constitution, U.S. Const. amend. V, and for the intentional infliction of emotional distress 18 U.S. Code § 2340, for knowingly and willfully trading private information and government documents related to Plaintiff Kevin Lofton without Plaintiffs permission or authorization for non-law enforcement purposes, for discriminating against Plaintiff in the application of a business loan, and for participating in an action to take funds belonging to Plaintiff in an effort to intimidate and inflict emotional distress.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S. Code § 1346

3. Venue is proper pursuant to 28 U.S. Code § 1346 and 28 U.S. Code §§§§§ 6226, 6228(a), 7426, 7428, and 7429

## PARTIES

4. Plaintiff Kevin Lofton is a protected class citizen and accountant by trade and the business owner of Skip 2 My Loop Publishing (and

including Giant Comix), which had an insured business value of $1,000,000 per Biberk Business Insurance Policy N9PL592338

5. Defendant is Isabella Guzman, Administrator of the US Small Business Administration (SBA)

## STATUTORY BACKGROUND

6. Under the Privacy Act, 5 U.S.C. § 552a, Federal agencies may not disclose information without consent unless certain exceptions apply to the disclosure. The following are the twelve (12) Privacy Act Exemptions when consent to release information is not required:

    1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;

    2) required under section 552 of this title (FOIA disclosures);

    3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section (routine uses);

4) to the Bureau of the Census for purposes of planning or carrying out a census or survey or related activity pursuant to the provisions of title 13;

5) to a recipient who has provided the agency with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable;

6) to the National Archives and Records Administration as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, or for evaluation by the Archivist of the United States or the designee of the Archivist to determine whether the record has such value;

7) to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the

agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought;

8) to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual;

9) to either House of Congress, or, to the extent of matter within its jurisdiction, any committee or subcommittee thereof, any joint committee of Congress or subcommittee of any such joint committee;

10) to the Comptroller General, or any of his authorized representatives, in the course of the performance of the duties of the Government Accountability Office;

11) pursuant to the order of a court of competent jurisdiction; or

12) to a consumer reporting agency in accordance with section 3711(e) of title 31. (5 U.S.C. § 552a)

7. Title VI, 42 U.S.C. § 2000d et seq., was enacted as part of the landmark Civil Rights Act of 1964. It prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.

8. U.S. Const. amend. IV states, in relevant parts, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

9. U.S. Const. amend. V creates a number of rights relevant to both criminal and civil legal proceedings.  In civil legal proceedings it requires that "due process of law" be part of any proceeding that denies a citizen "life, liberty or property" and requires the government to compensate citizens when it takes private property for public use.

10. 18 U.S. Code § 2340 prohibits torture committed by public officials under color of law against persons within the public official's custody or control. Torture is defined to include acts specifically intended to inflict severe physical or mental pain or suffering.

11. 28 U.S.C. §1346(b), §1402(b), §2401(b), and §§2671-2680 provides a limited waiver of the United States' immunity from suit, allowing claims "for damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)

## CLAIM FOR VIOLATION OF THE PRIVACY ACT

12. Early in the morning on Thursday, March 26, 2020, the Senate passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). On Friday, March 27, 2020, the House of Representatives also passed the CARES Act and President Trump quickly signed it into law the same day.

13. Title I of the CARES Act was separately titled the Keep American Workers Paid and Employed Act. Perhaps the most impactful provision of the Act was the availability of Small Business Association ("SBA") loans that may, under certain circumstances, have been converted into grants. The goal of the Act was to provide capital to

otherwise underfunded businesses, including non-profit organizations, in an attempt to help those businesses retain employees on payroll, covered by healthcare insurance, and off of unemployment.

14. Economic Injury Disaster Loans ("EIDL") provided loans of up to $2 million with interest rates capped at 3.75% for companies and 2.75% for nonprofit organizations, with payment of principal and interest deferred for up to 4 years. These loans were permitted to be used to pay for expenses that could have been met had the disaster not occurred, including payroll and other operating expenses.

15. In addition, a business that received an EIDL [ during the covered period ] as a result of a coronavirus related disaster declaration was eligible to apply for a Paycheck Protection Program ("PPP") Loan or the business may have refinanced their EIDL into a PPP Loan.

16. Section 1110 of the CARES Act also loosened credit standards for borrowers eligible to apply for PPP Loans. For instance, the SBA may have approved PPP Loans based solely on the applicant's credit score, without requiring submission of tax returns, or used alternative appropriate methods of determining ability to repay.

17.  To obtain a loan via COVID EIDL, small business owners must have met the eligibility requirements. Additionally, below were the credit score requirements:

- $500,000 or under: 570
- Greater than $500,000: 625

Applicants were required to submit a signed and dated IRS Form 4506-T for COVID EIDL authorizing the Internal Revenue Service ("IRS") to release business tax transcripts for SBA to verify their revenue.

18. As provided by Sec. 1102 (G) of the Cares Act, an eligible recipient applying for a covered loan shall make a good faith certification—

(I.)  that the uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations of the eligible recipient;

(II.)  acknowledging that funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments;

(III.)  that the eligible recipient does not have an application pending for a loan under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan; and

(IV.)  during the [ covered period ], that the eligible recipient has not received amounts under this subsection for the same purpose and duplicative of amounts applied for or received under a covered loan.

19. Beginning March 17, 2021, Isabella Guzman was the Administrator of the Small Business Administration

20. On or about September 1, 2021, Plaintiff submitted SBA loan application # 3323639082 through the SBA Covid-19 EIDL portal for an SBA EIDL loan in the amount of $195,000. Plaintiff has operated his business since July 2014 and been a federally registered vendor through SAMS since August 13, 2015. Plaintiff has published novels through this business, registered a copyright through the US Copyright Office ( Registration Number TXu-1-952-138) and has developed intellectual property including the country's first "comic book universe of all black

female superheroes". At the time of operation, Plaintiff's business had less than 50 employees in addition to himself.

21. On or about September 15, 2021 SBA staff including and with the participation of Administrator Guzman shared SBA loan application #3323639082 with unauthorized federal agents and agencies including US Treasury Office of Inspector General Special Agent-in-Charge Rod Ammari, Director of Field Operations Office of IRS Criminal Investigations Ryan Korner, Federal Deposit Insurance Corporation ("FDIC") Office of the Inspector General Special Agent-in-Charge Jeffrey Pittano, (former) US Attorney for the Central District Tracy Wilkison, and unidentified staff members of the White House, not for a civil or criminal law enforcement purpose and not for any civil or criminal law enforcement investigative purpose, but for the purpose of identifying ways to harm Plaintiff's economic interests. SBA staff and contacted parties knew and or should have known that there was no civil or criminal lawful basis to share Plaintiff's loan application and that there had been no allegations of any criminal activity alleged against Plaintiff warranting criminal investigative review.

22. Plaintiff alleges that SBA staff at the direction of and with the knowledge of, Administrator Guzman, shared Plaintiff's SBA loan application to unauthorized parties in violation of the Privacy Act, in order to give the illusion to necessary entities including Bank of America and the Franchise Tax Board, that parties were conducting a PPP criminal loan investigation, when in reality no such investigation was being performed or lawfully conducted. Furthermore, Plaintiff seeks to demonstrate and prove that the sharing of Plaintiff's SBA loan application through emails, texts, and phone conversations, was done solely for the purpose of "freezing" Plaintiff's loan application in order that the application not be processed to deny Plaintiff proper review and any allocation of a qualifiable EIDL.

23. On July 5, 2022 Plaintiff received a communication entitled "EIDL Reconsideration Request SBA: 0011720007729" from SBA Disaster and Recovery Specialist "Angela P.", Office of Capital Access, wherein the SBA admitted to sharing Plaintiff's loan application with an unnamed individual in the White House. Although Plaintiff is an admirer and supporter of the President, Plaintiff never communicated to any member of the White House about SBA loan application

#3323639082 and never authorized the SBA to communicate any information to the White House.

24. On July 5, 2022 Plaintiff also learned through the same communication stated above, that SBA loan application #3323639082 had been denied on March 28, 2022 and that further appeals would not be allowable as SBA funds had been finally exhausted on May 6, 2022.

25. Plaintiff aims to demonstrate that SBA loan application #3323639082 was accessed numerous times by numerous individuals and unauthorized individuals between September 2021 and May 5 2022, and SBA staff, at the direction of and with the knowledge of Administrator Guzman, frequently allowed access to SBA loan application #3323639082 wherein numerous notations and changes were made to the application without including proper or any attribution by any SBA staff member or officer in order to shield SBA staff from any liability or exposure relating to the unauthorized access. The manner in which SBA loan application #3323639082 was improperly shopped around to government agencies and the communications, both informal and formal, through texts, and emails, from SBA officers including Administrator Guzman had the ultimate

and desired effect of denying SBA loan application #332639082 for

$195,000 and denying the Plaintiff's loan increase request to $495,000

without proper review or proper attribution.

## CLAIM FOR VIOLATION OF TITLE VI

26. On or about April 6, 2021 Plaintiff began reporting to United

States Department of Justice ("DOJ") officials including First Assistant

US Attorney for the Central District Stephanie Christensen, Assistant

US Attorney Christina Shay and (former) US Attorney for the Central

District Tracy Wilkison about significant false claims violations

committed by Plaintiff's former employer UCLA and retaliatory

attempts made by UCLA staff, wherein UCLA staff had improper and

corrupt communications with a UCLA alumni and current Employment

Development Department ("EDD") judge to create a public record

undermining Plaintiff's credibility by characterization of being a

'disgruntled employee'. As a result of the actions by UCLA and the EDD

judge, Plaintiff was issued an EDD judgment denying Plaintiff's right to

EDD unemployment claims yet paradoxically Plaintiff was issued the

contested benefits, immediately after and in violation of the EDD

ruling. Although Plaintiff appealed the ruling and believed he was

deserving of his unemployment benefits, Plaintiff realized he was being issued the benefits in contravention of the EDD ruling in order to deny Plaintiff standing in any suit and to protect EDD from future liability. Nevertheless, Plaintiff reported the misallocation of government resources immediately to both EDD and to the DOJ and informed DOJ that while Plaintiff had contested the decision to deny the benefits, Plaintiff had reason to believe the benefits were being issued to him in order to rob him of standing in any future litigation against EDD. Rather than investigate Plaintiff's significant false claims allegations against UCLA which were clearly outlined in a document generated by Plaintiff entitled "UCLA violations", and instead of investigating the nature of Plaintiff being awarded benefits that EDD judges had ruled against providing, DOJ instead began a months long campaign to warn UCLA and EDD about any possible liability or exposure from Plaintiff, and DOJ officials also began a months long campaign to use DOJ's vast powers and influence to discover any information about Plaintiff that could be used against Plaintiff to prevent Plaintiff from pursuing claims against UCLA or EDD.

27. On or about April 12, 2021 and on or about May 5, 2021, Plaintiff applied for and received a First Draw PPP loan for $11,836 and a Second Draw PPP loan for $11,836, respectively, through third party PPP lender, Womply Fast Lane, for combined loan amount totaling $23,672. On or about June 15 2021 both the First Draw loan and Second Draw loan were totally forgiven. For several months, from April through September, DOJ and SBA had every opportunity to investigate Plaintiff and pursue any justifiable charges or allegations of unlawful activity against Plaintiff including for any possible indications that Plaintiff had made false representations or filed false documents to any state or federal agency. During this time DOJ and SBA through exhaustive investigation were able to fully vet and clear Plaintiff of any allegations of wrongdoing by Plaintiff and subsequently had opportunity to verify Plaintiff's allegations against UCLA and EDD by launching an investigation into Plaintiff's allegations. Though DOJ (and SBA) used their powers to investigate and verify Plaintiff, no investigations were launched into either UCLA or EDD despite Plaintiff's very specific reporting of allegations of waste, fraud, and abuse. In short, DOJ (and affiliated federal agencies including SBA)

were only concerned with using the powers of their agencies to discredit Plaintiff, and not to pursue credible and easily verifiable allegations of criminal conduct by UCLA officials and EDD officials.

28. On or about September 15, 2021 at the direction of Administrator Guzman and SBA Office of the Inspector General Special Agent-in-Charge Weston King, at the direction and suggestion of DOJ officials including Tracy WIlkison, SBA staff effectively put a review hold on SBA loan application #3323639082 in order that SBA loan application #3323639082 would not be processed in the same manner as other SBA loan applications and not be processed in accordance with the provisions of the congressionally approved CARES Act and SBA EIDL program.

29. Starting in September 2021, the SBA began and continued an unrelenting campaign against Plaintiff whereby Plaintiff's SBA loan application was withheld from proper review and proper determination. Furthermore, from September – March, Plaintiff's loan application was frequently accessed by SBA staff and non SBA staff, including by staff of US Treasury Office of Inspector General Special Agent-in-Charge Rod Ammari, Director of Field Operations Office of IRS Criminal

Investigations Ryan Korner, FDIC Office of the Inspector General Special Agent-in-Charge Jeffrey Pittano, and (former) US Attorney for the Central District Tracy Wilkison, in which SBA loan application #3323639082 was discussed through emails, texts and phone messages by the same parties, and in which notations were frequently added without any attribution to the agents accessing the application or making changes to the application. Plaintiff regularly inquired of the SBA about the status of this application and received many false promises and assurances on the phone and in more than 50 emails from SBA Disaster Customer Service and SBA PDC Reconsideration, that the SBA would review and escalate the application to receive proper determination. Such false promises had the effect of not only denying Plaintiff proper consideration of his application, but also jeopardizing Plaintiff's business relationships as Plaintiff's faith and credibility were ruined by SBA's deliberate mishandling and misleading tactics.

30. On December 31, 2021, due to the continued lag in processing SBA loan application #3323639082, and due to the ongoing economic relief needed to facilitate Plaintiff's affected business operations, Plaintiff applied for an EIDL targeted advance. Due to the fact Plaintiff

is a minority and Plaintiff's business is at least 51% minority owned, and due to the fact that Plaintiff's business is in a qualifying economically disadvantaged area, Plaintiff qualified for and was granted an EIDL targeted advance grant for $10,000 and $5,000.

31. Plaintiff alleges that the SBA was aware that Plaintiff was a citizen of protected class due to the review and application process for Plaintiff's First Draw PPP loan, Second Draw PPP loan and the EIDL targeted advance. Furthermore, SBA staff including Administrator Guzman either knew or should have known that Plaintiff would be qualified for and approved for an EIDL given the due diligence and application review required to process Plaintiff's First and Second Draw loan and EIDL targeted advance.

32. Despite being evaluated for and having qualified for and having been approved for the First and Second Draw PPP loans, as well as the EIDL targeted advance, neither Administrator Guzman or any other SBA official made any effort to determine Plaintiff's eligibility for SBA loan application #3323639082 during the 6-8 months the application was put on hold, precisely because Administrator Guzman knew that Plaintiff did qualify and should have been approved, and the SBA,

FDIC, IRS DOJ and US Treasury were determined to not approve Plaintiff's SBA loan application #3323639082. Regarding eligibility the SBA did not attempt to verify Plaintiff's credit score for loan eligibility, nor did the SBA seek to review IRS form 4506-T strictly for loan eligibility, rather the SBA sought Plaintiff's tax history and tax information not pertaining to years pertinent to the loan application in an effort to find and leverage any outstanding taxes owed to the IRS against Plaintiff so as to cause emotional distress.

33. Additionally, due to the procrastinated processing of SBA loan application #3323639082 and due to the ongoing financial pressures of distressed business operations, on December 31, 2021, Plaintiff submitted an increase request to the SBA, sent to covideidlincreaserequest@sba.gov for an increase to a new loan amount of $495,000.

34. On June 5, 2022 Plaintiff was informed by the SBA that Plaintiff was no longer eligible for an SBA loan because funding had been exhausted in May 2022. Ultimately as a result of these tactics and false promises and improper handling of Plaintiff's loan application,

Plaintiff's business fell into an economic spiral that was irreparable,

causing the total loss of Plaintiff's business, Skip 2 My Loop Publishing.

## CLAIM FOR VIOLATION OF THE FOURTH AND THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

35. On or about October 15, 2022, SBA Office of the Inspector

General Special Agent-in-Charge Weston King participated in

discussions with various federal agents and agencies including US

Treasury Office of Inspector General Special Agent-in-Charge Rod

Ammari, Director of Field Operations Office of IRS Criminal

Investigations Ryan Korner, FDIC Office of the Inspector  General

Special Agent-in-Charge Jeffrey Pittano, and ( former ) US Attorney for

the Central District Tracy Wilkison to extend retaliatory efforts against

Plaintiff to include targeting Plaintiff's personal banking account and

banking relationships by contacting Plaintiff's banker, Bank of

America, in the guise of conducting a PPP loan investigation.

36. On October 28, 2021, at the direction of Special Agent-in-Charge

King and various federal agencies, including in emails, texts, and phone

calls between US Treasury Office of Inspector General Special Agent-in-

Charge Rod Ammari, Director of Field Operations Office of IRS

Criminal Investigations Ryan Korner, FDIC Office of the Inspector General Special Agent-in-Charge Jeffrey Pittano, and ( former ) US Attorney for the Central District Tracy Wilkison, Bank of America acted to zero out Plaintiff's personal bank account and business account of all funds, including disaster relief funds allocated by order of the governor of California, and funds designated to pay Plaintiff's business expenses and business insurance, and Plaintiff's living and rent expenses, and thereby remit those funds on instruction from agents including Special Agent-in-Charge King to a third-party entity affiliate of the federal government. Plaintiff's funds were remitted under the guise of tax collection, not reclaiming either the First or Second Draw loans which had been totally forgiven and Plaintiff was not given any notice that the government or any federal agency intended to take such action although by law, Plaintiff was entitled to notification about tax disputes as well as the opportunity to pay installment plans and or make any other necessary arrangements to appeal or settle such claims in a timely manner, in good faith, and on structured terms that would have not been harmful to the Plaintiff or Plaintiff's ultimate ability to pay any and all outstanding taxes. Parties' participation in the absconding of

Plaintiff's personal and business funds robbed Plaintiff of the ability to pay needed expenses including rent, utilities and business insurance and was done solely for the purpose of devastating Plaintiff financially.

## CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

37. On February 17, 2022 SBA Office of the Inspector General Special Agent-in-Charge Weston King personally received a request from Plaintiff to review misconduct of SBA staff regarding the discriminatory targeting and unlawfully sharing of SBA loan application #3323639082 as well as address and take corrective actions regarding the absconding of Plaintiff's banking funds.

38. On or about February 17, 2021, Special Agent-in-Charge King directed and or gave SBA staff including Administrator Guzman permission to continue SBA staff misconduct and indicated that the SBA Inspector General's office would neither take corrective action with respect to SBA misconduct nor investigate or prosecute SBA staff for misconduct related to SBA loan application #3323639082.

39. Pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b), §1402(b), §2401(b), and §§2671-2680, Plaintiff filed standard form 95 on July 31, 2022 through certified mail.

40. Since on or about February 17, 2022 the SBA Office of the General Counsel has been read into and had knowledge of Plaintiff's claims and allegations and has since that time investigated and had ample opportunity to investigate all allegations fully and performed all due diligence to make proper lawful determinations for the SBA with respect to Plaintiff's claims. Furthermore, the SBA Office of the General Counsel has long since determined and decided since on or about February 17 2022 that no further investigation or determination need be taken or performed or would be taken or performed by the SBA in preparation of Plaintiff's expected filing of claims. Subsequently, Standard form 95 was received by the SBA on or about August 22, 2022 and was denied on or about August 23, 2022.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kevin Lofton prays that this Court issue a decision and order:

1.) Assessing a civil penalty of $1,000,000 for loss of Plaintiff's going concern Skip 2 My Loop Publishing Inc,, plus $195,000 for the taking and impairment of SBA loan application #3323639082 (not including loan increase request amount of $495,00), plus $195,000 for actual damages relating to violation of the Privacy Act (not including loan increase request amount of $495,000), plus $2,500 for actual damages related to the taking of personal funds from Plaintiff's personal bank account and business bank account, and plus $102,500 for the intentional infliction of emotional distress for a total sum of damages of $1,495,000.

2.) Granting Plaintiff such further relief as the Court deems just and proper.

Dated: October 6, 2022                    Respectfully

submitted,                                By,

                                          *[s] Kevin Lofton*

                                          Kevin Lofton, Pro Se
                                          868 Victor Ave #14
                                          Inglewood, CA, 90302
                                          (310) 773-1296

                                          Acting Pro Per

July 31, 2022

Via Priority Mail with Delivery Confirmation


Office of the General Counsel

Small Business Administration

409 3rd Street, SW.,

Washington, DC 20416


      Re: Demand for Payment


To whom it may concern


Please be advised that this is a demand for payment from the Small Business Administration, in accordance with the Federal Torts Claims Act, for the sum of $1,495,000 for violations of the Privacy Act, for violations of Title VI, regarding retaliation and discrimination, for violations of the Takings Clause of the Fifth Amendment of the US Constitution, and for the intentional infliction of emotional distress. On or about September 1, 2021, I submitted an application to the SBA for an economic disaster injury loan in the amount of $195,000. This loan application was my property which I submitted to the SBA for evaluation in consideration of approving a $195,000 loan from the SBA that my business qualified for as a matter of law, in accordance with the emergency aid granted by Congress in order to help small businesses such as mine which had suffered during the Covid pandemic. At the same time that my EIDL loan application was submitted to the SBA, I was also engaged in a burgeoning legal dispute with my former employer, the UC Regents/ UCLA Corporate Financial Services, regarding retaliation and qui tam claims, presented by myself against the UC, for violations of the California and Federal False Claims Act.

Due to the serious and sensitive nature of these qui tam and retaliation claims, I reported all allegations to the US Department of Justice, directly to US Attorney Tracy L. Wilkison. Unbeknownst to myself at the time, UCLA was preparing to enter into a new financial relationship involving the licensing and agreement of a grant of rights agreement which UCLA hoped would net UCLA and additional annual revenue gain of up to $100 million dollars, which could have been threatened or forfeited with the revelations contained in my false claims whistleblower reports. In an effort to help preserve UCLA's financial ambitions, and as a political favor done to avoid embarrassing the UC and the UC's interests and political backers and beneficiaries, Ms Wilkison used her investigative powers to receive and review and obstruct and arrest and ultimately "take" my SBA EIDL application (SBA loan application #3323639082)

in such a way so as to prevent this application from being fairly evaluated per my request and per the intent of the EIDL program.

Agents of the SBA facilitated and participated in the action of taking my SBA loan application. Agents of the SBA, including SBA administrator Isabella Guzman and regional inspector general Weston King, had knowledge of and or participated directly in the action of taking SBA loan application #3323639082 and distributing this application to federal agencies other than the SBA. Agents of the SBA including SBA administrator Isabella Guzman and regional inspector general Weston King, had knowledge of and/ or participated in disseminating SBA loan application #3323639082 to the following federal agencies including the Treasury department, FDIC, the IRS, and USDOJ. Additionally, the involvement of Inspector General King lent a false air of propriety to this misconduct, while also indicating to the offending agencies that the SBA Inspector General would lend his office to help protect the offenders from retribution or prosecution.

Disseminating SBA loan application #3323639082 to agencies other than the SBA is a violation of the Privacy Act. Per the Privacy Act, agencies may not disclose records between one another without a person's written consent, except for law enforcement purposes. The SBA did not receive or request written permission from me to share this application, nor was this application shared for law enforcement purposes, but rather this application was shared and impeded in order to help another federal agency retaliate against me for reporting false claims violations against the UC. Because SBA loan application #3323639082 was singled out and denied fair consideration equal to every other application, the SBA violated the Takings Clause of the Fifth Amendment, prohibiting the government from taking private property without notification and compensation, and also the SBA, in doing so, willingly participated in a broader effort to inflict intentional emotional distress upon myself and my business by impairing my ability to secure economic injury disaster assistance for my business in violation with the stated intent of Congress to help small businesses such as mine with such appropriation funding.

Additionally, agents of the SBA took active steps to also share my personal banking information as well as tax information to agents of the FDIC (including FDIC Inspector General Jeff Pittano), US Treasury (including special agent Rod Ammari), IRS (including special agent Ryan Korner), and USDOJ (including US attorney Tracy Wilkison, US Assistant Attorney General Kenneth Polite, and Deputy Assistant Attorney General/ Controller Jolene Lauria), in order to aid in efforts to inflict emotional distress upon myself in an effort to retaliate against me for threatening the business and personal political relationships enjoyed by the UC Regents/ UCLA. Sharing this banking and tax information was also a violation of the Privacy Act, since it was done without written permission by me and was not done in a law enforcement capacity, and was done with the aim and intention of targeting me and my business interests and for the purposes of inflicting emotional distress.

The SBA's conduct with respect to obstructing and taking SBA loan application #3323639082 was outrageous and no reasonable person would find such conduct tolerable. Taking SBA loan application #3323639082 and participating in efforts to target my interests utilizing my personal banking information and tax information, not in a law enforcement capacity, is conduct so substantial or enduring that no reasonable person could be expected to endure it  As a result of these injuries, I have lost my business and my bank accounts were debited without my permission, and payment was sent to the government, without my permission, in such a way so as to prevent me from being able to pay my

monthly living expenses, including my rent and also to prevent me from being able to sustain business operations, including making timely payments of my business insurance.

Furthermore, Inspector General King's involvement and review of these actions without issuing clear guidance to SBA agents with respect to issues and areas of potential or actual agency wrongdoing, while also not validating any assertions or conclusions that SBA agency actions were proper law enforcement activities, lent the clear and unmistakable impression to the agency and agents that these actions were not proper law enforcement activities and that agents need not fear punishment from the Inspector General's Office. Inspector General King's actions and failure to demand that corrective actions be taken to address agency wrongdoing in this regard made him complicit in these actions and led agents to understand that the Inspector General's Office would protect offending agents from punishment/ prosecution for these violations.

Under the FTCA, 28 U.S.C. §§ 2671-2680, individuals who are injured or whose property is damaged by the wrongful or negligent act of a federal employee acting within his or her official duties may file a claim with the government for reimbursement for that injury or damage. To state a valid claim, the claimant must demonstrate that:

1. he or she was injured, or his or her property was damaged by a federal government employee;

2. the employee was acting within the scope of his or her official duties;

3. the employee was acting negligently or wrongfully; and

4. the negligent or wrongful act proximately caused the injury or damage of which he or she complains.

In an effort to resolve and release all future claims against the SBA for these actions, I file this claim and am willing to except $1,495,000 in damages.

The sum is determined as follows:

**$1,000,000 for loss of Skip 2 My Loop Publishing**. This is the value of the company which was fully insured and damaged and destroyed as a result of the SBA's negligent and wrongful refusal to process SBA loan application #3323639082. SBA's misconduct with respect to the SBA's failure to process SBA loan application #3323639082 was negligent and wrongful, if not egregious, and resulted in such a way that prevented me from reapplying for the EIDL or any other. SBA negligently and or wrongfully held on to this loan without making a proper determination and as a result I could not apply for any other loan before the funding eligibility window closed. Although SBA received and processed thousands of loan applications after SBA loan application #3323639082 was submitted, the SBA withheld loan application #3323639082 and negligently and or wrongfully discriminated against this application by not processing or evaluating the loan application fairly and equally. The SBA's actions and participation in the damage to SBA loan application #3323639082 was negligent and wrongful.

.

**$195,000 for the taking and impairment of SBA loan application #3323639082** for actual damages relating to the violation of the Takings Clause of the Fifth Amendment. This is the value of SBA loan application #3323639082. SBA's actions and participation in the violation of the Takings Clause of the

Fifth Amendment was wrongful and or negligent causing SBA loan application #3323639082 to be shared amongst federal agencies without my permission, resulting in the actual monetary loss of $195,000 in qualifiable federal loans.

**$195,000 for actual damages relating to violation of the Privacy Act** with respect to the sharing of SBA loan application #3323639082. SBA's actions and participation in the violation of the Privacy Act was wrongful and or negligent causing SBA loan application #3323639082 to be shared amongst federal agencies without my permission, resulting in the actual monetary loss of $195,000 in qualifiable federal loans.

**$2,500 for actual damages relating to the taking of personal funds from my personal bank account and business bank account**. SBA's actions and participation in this action was negligent and or wrongful, causing the taking of funds/ damage to my personal and business bank account.

**$102,500 for the intentional infliction of emotional distress.** SBA's conduct with respect to the above was negligent and wrongful causing predictable, if not, intentional, infliction of emotional distress.

**Total claim for damages $1,495,000 = $1,000,000 + $195,000 + 195,000 + $2,500, + $102,500**

Sincerely

Kevin M. Lofton

868 Victor Ave #14

Inglewood CA, 90302

(Telephone: (310) 773-1296)

kevinmichaellofton@gmail.com

# CLAIM FOR DAMAGE, INJURY, OR DEATH

**INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO. 1105-0008

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY   ☐ CIVILIAN | | | | |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

11. **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|

12. (See instructions on reverse). **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|

**I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.**

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|

| **CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM** | **CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS** |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government.  (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

**NSN 7540-00-634-4046**

**STANDARD FORM 95** (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☐ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☐ No    17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance?  ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☐ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

   A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**